## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERICA WOODARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Case No. CIV-23-666-G |
| COMMUNITY HEALTH CENTERS | ) |
| INCORPORATED a/k/a COMMUNITY | ) |
| HEALTH CENTERS, INC. et al. | ) |
| | ) |
| Defendants. | ) |

## <u>ORDER</u>

Plaintiff Erica Woodard initiated this action in July 2023, alleging (1) unlawful discrimination and retaliation under the Americans with Disabilities Act and the Americans with Disabilities Amendments Act (collectively, the "ADA"); (2) retaliation for exercising her rights under the Family and Medical Leave Act ("FMLA"); and (3) tortious interference with both a contractual relationship and a prospective economic advantage. Now before the Court is the Motion for Summary Judgment (Doc. No. 25) filed by Defendants Community Health Centers Incorporated a/k/a Community Health Centers, Inc. and Community Health Centers of Oklahoma, a Trade Name for Community Health Centers Incorporated (together, "CHCI"), Isabella Lawson, and Delois Anderson. Plaintiff has responded in opposition (Doc. No. 30). Defendants have replied in further support of their Motion (Doc. No. 33). Plaintiff has filed a surreply with leave of the Court (Doc. No. 44).

### I.    Standard of Review

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The

Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the

[nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

## II.     Relevant Background[1]

CHCI is a nonprofit medical organization that operates medical treatment facilities in the State of Oklahoma.  Plaintiff began working for CHCI on November 7, 2016, in its Healthy Start Initiative ("Healthy Start"), located in Oklahoma City.  *See* Defs.' Mot. at 7, 10; Compl. (Doc. No. 1) ¶ 31.  According to Plaintiff's official job description, she was to perform "assigned job duties at any CHCI facility as requested by immediate supervisor, division director/program coordinator, or CEO."  Defs.' Mot. at 10; Pl.'s Resp. at 9.

From 2017 to 2021, Plaintiff enjoyed generally positive performance reviews and was awarded multiple salary increases.  *See* Pl.'s Resp. at 14-15.  Plaintiff's tenure was punctuated by friction between herself and colleagues, however, particularly Healthy Start Program Director Tahirah Watley.  On January 20, 2022, Plaintiff submitted a "formal letter of grievance" to her direct supervisor Melissa Thomas, Human Resources Director Delois Anderson, CEO Isabella Lawson, and Healthy Start Project Officer Ijeamaka Ogbanna.  *See* Defs.' Ex. 10, Jan. 20, 2022 Letter (Doc. No. 25-10); Compl. ¶ 15.  The January 20, 2022 Letter described multiple events from 2018 to 2022 involving Watley that Plaintiff characterized as "discrimination (age and education), harassment/bullying, retaliation, isolated workplace environment, and lack of employee development plan."  Jan. 20, 2022 Letter at 1.

Plaintiff's time at CHCI was also marked by personal challenges.  On November 8,

---

[1] Facts relied upon in this Order are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff as the nonmoving party.

2021, Plaintiff applied for intermittent leave under the FMLA to assist in the care of her father who was suffering from cancer. *See* Compl. ¶ 10; Pl.'s Resp. Ex. 7, Woodard Aff. (Doc. No. 30-7) at 1.[2] On January 26, 2022, Plaintiff suffered a panic attack at work. *See* Pl.'s Resp. at 15; Woodard Aff. at 1. On January 27, 2022, Plaintiff was treated for "depressive disorder" and "anxiety" by Dr. Peter Chan, who noted that Plaintiff's "[p]sychological condition is worsening." Pl.'s Resp. Ex. 34, Jan. 27, 2022 Chart (Doc. No. 30-34) at 1.[3] Plaintiff reported symptoms of anxiety, depression, nausea, constipation, decreased appetite, and decreased sleep. *See id.* at 1-2. Dr. Chan characterized her depression as extreme to severe based on the Zung Depression Scale and recommended that she take off work until February 14, 2022. *See* Pl.'s Resp. at 15-16; *id.* Ex. 31, Zung Scale (Doc. No. 30-31); Pl.'s Resp. Ex. 8, Jan. 27, 2022 Dr.'s Note (Doc. No. 30-8).

That same day, Plaintiff submitted an FMLA leave request form to CHCI requesting time off through February 14, 2022. *See* Pl.'s Resp. at 16; *id.* Ex. 5, FMLA Form (Doc. No. 30-5). Plaintiff states therein, in relevant part, "I am requesting Family Medical Leave which will begin on/or about 1/28/2022 [d]ue to: A serious health condition which requires medical attention. I expect this leave to continue until 2/14/2022, or about that time."

---

[2] At CHCI, the process for employees to request FMLA is as follows: (1) Human Resources provides an FMLA form to the employee; (2) the FMLA form is signed by the employee and her supervisor; (3) the supervisor submits the form to Human Resources for review; and (4) Human Resources submits the reviewed form to CEO Lawson. *See* Pl.'s Resp. at 16; *id.* Ex. 6, Anderson Dep. 65:3-66:13 (Doc. No. 30-6); Pl.'s Resp. Ex. 3, Lawson Dep. 108:19-22 (Doc. No. 30-3).

[3] During her February 11, 2022 follow-up appointment, Dr. Chan characterized Plaintiff's diagnosis as "[g]eneralized anxiety disorder" and "[m]oderate episode of recurrent major depressive disorder." Pl.'s Resp. Ex. 26, Feb. 11, 2022 Chart (Doc. No. 30-26) at 2.

FMLA Form at 1.  On January 28, 2022, Dr. Chan completed the medical certification that CHCI required to be submitted with the form, faxing it to CHCI Human Resources.  *See* Pl.'s Resp. at 16; *id.* Ex. 9, FMLA Certification (Doc. No. 30-9).  The FMLA Certification states that Plaintiff "suffers from chronic anxiety resulting in office visits, and recent incapacity 1-27-22 thru 2-14-22."  FMLA Certification at 1.  Plaintiff took leave and returned to work on February 15, 2022.  *See* Pl.'s Resp. at 17.

Back at work, Plaintiff on February 16, 2022, at 1:11 p.m., emailed Ogbonna, copying Thomas, Anderson, Lawson, and Watley: "Since submitting my [January 20, 2022] grievance, I have not received any communication in addressing my problems or concerns!"  Defs.' Ex. 16, Grievance Email Chain (Doc. No. 25-16) at 3.  Lawson responded to Plaintiff's email at 4:41 p.m., writing in relevant part: "After reviewing the grievance and the written response in addition to following up with our corporate attorney, I have decided to reassign you under the supervision of Susan Geurin, QI/Risk Management Director, effective immediately.  Ms. Geurin is the current supervisor of the case managers throughout the Community Health Centers of Oklahoma system that provide enabling services to our patients.  Your office will be located you [sic] at [CHCI Headquarters] Mary Mahoney [in Spencer, Oklahoma].  Please feel free to give me a call if you have any questions."  *Id.* at 2-3; *see* Defs.' Mot. at 8.  Plaintiff called Lawson that same day, but Lawson declined to answer.  *See* Lawson Dep. 164:19-165:16.  At 5:58 p.m., Plaintiff forwarded Lawson's email to Lawson, Geurin, Anderson, Watley, Thomas, Ogbonna, and the CCHI Board of Directors to notify them "of the incompliance in my grievance process."  Grievance Email Chain at 1-2.  Plaintiff wrote, in part, "I'm requesting

assistance in this process as I feel as though I'm constantly being discriminated against and punished" and "I have also submitted documentation to EEOC for investigation!"  *Id.* at 2.

On February 17, 2022, before the workday began, Plaintiff spoke with Lawson by telephone.  *See* Defs.' Mot. at 12; Pl.'s Resp. at 18; Lawson Dep. 165:17-166:1.  Lawson acknowledged that Plaintiff had just returned from leave, and Plaintiff explained that she had taken leave for mental health reasons.  *See* Pl.'s Resp. at 18; *id.* Ex. 12, Lawson Call Recordings (Doc. No. 30-12) at 5-6.[4]  Lawson ended the first conversation by stating that Geurin would meet Plaintiff at Healthy Start to discuss her new role.  *See* Lawson Dep. 126:2-6.[5]  Lawson then called Geurin to arrange the meeting with Plaintiff, but Geurin was not available to meet.  *See* Pl.'s Resp. at 19; Lawson Dep. 126:2-22.  Lawson then called Plaintiff, before 8:00 a.m., to place her on administrative leave for two days.  *See* Lawson Dep. 169:12-21; Pl.'s Resp. at 19; *id.* Ex. 37, Administrative Leave Email (Doc. No. 30-

---

[4] Plaintiff's Exhibit 12 is a compilation of recorded telephone call transcriptions between Plaintiff and Lawson on the morning of February 17, 2022 (though seemingly mislabeled as February 7, 2022).  The final transcription erroneously identifies the call participants as Plaintiff and Anderson, *see* Lawson Call Recordings at 13, instead of Plaintiff and Lawson.  *See* Lawson Dep. 115:14-116:2.  It is not clear from the record whether the transcriptions are arranged in chronological order or whether each transcription represents a separate telephone call.

[5] The transcription of the call appears to show that Lawson initially instructed Plaintiff to report to Mary Mahoney that morning to meet with Geurin.  *See* Lawson Call Recordings at 7.  But Lawson testified that she instructed Plaintiff to report to Healthy Start for the meeting, at least on the telephone.  *See* Lawson Dep. 123:21-124:5, 126:2-6, 166:2-6.  At one point Lawson testified that she instructed Plaintiff to report to Mary Mahoney by email, *see id.* at 193:23-194:22, but Defendants could not locate a copy of the email.  *See* Pl.'s Resp. Ex. 49 (Doc. No. 30-49) at 1.  Considering the conflicting evidence, the Court views the evidence in the light most favorable to Plaintiff and assumes that Lawson instructed Plaintiff to report to Healthy Start, not Mary Mahoney, on the morning of February 17, 2022.

37).  Lawson testified that she placed Plaintiff on administrative leave solely because Geurin was unavailable and additional time was needed to determine Plaintiff's new job duties.  *See* Lawson Dep. 169:12-24.[6]

On February 18, 2022, at 9:36 a.m., Plaintiff submitted two additional grievance letters to the CHCI Board, Lawson, Anderson, and others "to document the retaliative behavior that [she] recently experienced at [CHCI]" by Lawson and Anderson.  Pl.'s Ex. 39, Lawson Grievance (Doc. No. 30-39) at 1; *see* Pl.'s Resp. Ex. 40, Anderson Grievance (Doc. No. 30-40); Pl.'s Resp. Ex. 38 (Doc. No. 30-38) at 2.  The letters recounted the events of recent weeks—including Plaintiff's FMLA leave—with Plaintiff stating, "I feel like I have been constantly bullied, discriminated against (disability and age)" and "I have reported this incident to OSHA for further investigation."  Lawson Grievance at 1-2; *see* Anderson Grievance.

After receiving the grievance letters, Lawson decided to terminate Plaintiff.  *See* Lawson Dep. 153:17-154:6.  At 3:21 p.m., Anderson sent Plaintiff a letter signed by Lawson firing her "due to insubordination."  Pl.'s Resp. Ex. 42, Termination Letter (Doc. No. 30-42); *see also* Pl.'s Resp. Ex. 13 (Doc. No. 30-13) at 1-2.  The internal Personnel Action Form, documenting Plaintiff's termination and dated February 21, 2022, states that Plaintiff was in the Healthy Start department throughout her time at CHCI and that her supervisor was Melissa Thomas.  *See* Pl.'s Resp. Ex. 43, Termination Form (Doc. No. 30-

---

[6] In her discovery responses, Lawson stated that she put Plaintiff on administrative leave "to allow me some time to determine how to respond to her knowing failure and refusal to report to her reassigned work location."  Pl.'s Ex. 44, Def. Lawson's Resps. to Pl.'s Disc. Reqs. (Doc. No. 30-44) at 2.

43).  In discovery, CHCI identified Thomas as Plaintiff's supervisor as of February 18, 2022.  *See* Pl.'s Resp. Ex. 33, Def. CHCI's Resps. to Pl.'s Disc. Reqs. (Doc. No. 30-33) at 6-7.

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination on or about April 27, 2022, and an Amended Charge on or about October 17, 2022.  *See* Compl. ¶ 5; Defs.' Mot. Ex. 6 (Doc. No. 25-6); Defs.' Mot. Ex. 7 (Doc. No. 25-7).  The EEOC issued a Dismissal and Notice of Rights letter on May 4, 2023.  *See* Compl. ¶ 5.  Plaintiff timely brought this lawsuit.

## III.   Discussion

Plaintiff brings the following claims: (1) discrimination and retaliation claims arising under the ADA; (2) a retaliation claim arising under the FMLA; and (3) tort claims arising under Oklahoma law.  Defendants move for summary judgment on all of Plaintiff's claims.[7]

### A.  ADA Discrimination Claim

The ADA prohibits discrimination "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  Plaintiff contends that CHCI unlawfully discriminated against her by terminating her employment because of her disability.  *See* Compl. ¶¶ 43-47.  Because Plaintiff has not presented direct evidence of disparate treatment and relies instead on circumstantial evidence, the Court applies the familiar *McDonnell Douglas* burden shifting framework.  *See Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883

---

[7] Although Defendants' Motion also addresses an ADA failure to accommodate claim, no such claim is asserted by Plaintiff.  *See* Defs.' Mot. at 19-20; Pl.'s Resp. at 23 n.8.

(10th Cir. 2015); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Under this framework, Plaintiff must establish a prima facie case of discrimination, which shifts the burden to CHCI to articulate a legitimate, nondiscriminatory reason for the termination, which in turn shifts the burden back to Plaintiff to show that the offered justification is pretextual.  *See EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011).

    *1.  Prima Facie Case*

    To establish a prima facie case, Plaintiff must show that "(1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability."  *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015) (internal quotation marks omitted).  Establishing a prima facie case is "not onerous."  *Id.* (internal quotation marks omitted).  Defendants contend that Plaintiff fails to establish a prima facie case because Plaintiff is not disabled under the ADA and, even if she was, CHCI was not aware of her disability and therefore cannot be held liable for discrimination.  *See* Defs.' Mot. at 17.[8]

    a.  <u>Whether Plaintiff Was Disabled Under the ADA</u>

    An individual is disabled under the ADA if, as relevant here, she has "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1).  The statute directs that the definition of disability "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this

---

[8] The parties agree that Plaintiff was qualified to perform the essential functions of her job. *See* Compl. ¶ 46; Defs.' Reply at 2.

chapter." *Id.* § 12102(4)(A).  To make a showing that she is disabled, Plaintiff "must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) (internal quotation marks omitted).[9]

Although the ADA does not define "physical or mental impairment," an EEOC regulation specifies that the term encompasses "[a]ny mental or psychological disorder, such as . . . emotional or mental illness." 29 C.F.R. § 1630.2(h)(2).  Anxiety and depression are recognized mental impairments under the ADA.  *See Mayfield v. Target Corp.*, No. 5:18-CV-04036, 2019 WL 5576938, at *3 (D. Kan. Oct. 29, 2019) (noting the plaintiff's "recognized impairment of generalized anxiety disorder"); *Hobson v. St. Luke's Hosp. & Health Network,* No. 08-CV-05652, 2009 WL 3125513, at *5 (E.D. Pa. Sept. 28, 2009) (noting that depression is a recognized impairment under the ADA); *see also* E.E.O.C., *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities*, 1997 WL 34622315, at *2 (Mar. 25, 1997) (identifying anxiety disorders as an example of emotional or mental illness included within the ADA's mental impairments). Plaintiff has submitted medical records showing that she had generalized anxiety disorder and major depressive disorder, as well as a medical certification form signed by her doctor characterizing her condition as "chronic anxiety."  *See* Feb. 11, 2022 Chart at 2; FMLA

---

[9] Whether Plaintiff has a recognized impairment and has identified one or more major life activities is a question of law for the Court; whether the recognized impairment limits a major life activity is ordinarily a question of fact for the jury.  *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011).

Certification at 1.  This uncontroverted evidence is sufficient to show that Plaintiff had a recognized impairment.

Plaintiff has further identified major life activities affected by her impairments. Plaintiff states that her anxiety and depressive disorders substantially limited "her ability to concentrate, speak, perform basic tasks, and drive."  Pl.'s Resp. at 26.  She testifies that during her FMLA leave, she experienced "extreme difficulty concentrating, processing information, and speaking."  Woodard Aff. at 2.  She further testifies that she continues to suffer from anxiety and depression that limit her ability to eat and sleep.  *See id.* at 3.

Several of these activities qualify as major life activities.  *See* 29 C.F.R. § 1630.2(i)(1).  The resulting question is whether one or more of Plaintiff's identified mental impairments substantially limits the performance of one or more of her identified major life activities.  *See Russell v. Phillips 66 Co.*, 184 F. Supp. 3d 1258, 1268 (N.D. Okla. 2016).  As noted above, Plaintiff has presented affidavit testimony contending that her mental conditions limited the referenced life activities.  Plaintiff has also submitted medical records that: (1) link Plaintiff's sleeping, eating, and digestive issues with her depression diagnosis, *see* Woodard Aff. at 2-3, Zung Scale; and (2) reflect contemporaneous symptoms of anxiety, nausea, decreased appetite, and decreased sleep, *see* Jan. 27, 2022 Chart at 1-2.  Performing an "individualized assessment" as required, the Court concludes that the record includes sufficient evidence to allow a reasonable jury to find that Plaintiff's impairments "substantially limit[ed]" one or more of her major life activities.  29 C.F.R. § 1630.2(j)(1)(iv); *see also id.* §§ 1630.2(j)(1)(v) (prescribing that the comparison of the plaintiff's performance of a major life activity to the performance by most people in the

general population "usually will not require scientific, medical, or statistical analysis"), §

1630.2(j)(1)(vi) ("The determination of whether an impairment substantially limits a major

life activity shall be made without regard to the ameliorative effects of mitigating

measures.").

      b.  <u>Whether Plaintiff Was Discriminated Against Because of Her Disability</u>

Finally, Plaintiff must prove causation, "i.e., that she was discriminated against

because of her disability." *McKenzie-Nevolas v. Deaconess Holdings LLC*, No. CIV-12-

570-D, 2014 WL 518086, at *1 (W.D. Okla. Feb. 7, 2014); *see also Osborne*, 798 F.3d at

1266. Defendants claim that Plaintiff cannot show that she suffered disability

discrimination because CHCI was not aware she was disabled. *See* Defs.' Mot. at 17-18;

Defs.' Reply at 3.

Although Defendants are correct that an employer cannot be held liable for

disability discrimination where the employer was unaware that the employee was disabled,

*see Ewing v. Doubletree DTWC, LLC*, 673 F. App'x 808, 812 (10th Cir. 2016), there is

evidence in the summary-judgment record reflecting that CHCI, and decisionmaker

Lawson in particular, were aware of Plaintiff's disability. First, Dr. Chan's FMLA

Certification Form, which noted Plaintiff's "chronic anxiety," was sent to CHCI Human

Resources, where it would have been forwarded to Lawson per CHCI policy. *See* FMLA

Certification Form; Lawson Dep. 108:19-22; Anderson Dep. 65:3-66:13. Second, Plaintiff

told Lawson that she was forced to take off work due to her mental health impairment. *See*

Lawson Call Recordings at 5-6. Finally, Anderson admitted that her affidavit stating that

"[a]t no time prior to [Plaintiff's] February 18, 2022 termination was I aware, either

explicitly or implicitly, that [Plaintiff] had a disability of any kind" was false. Pl.'s Resp. Ex. 46, Anderson Aff. (Doc. No. 30-46) at 2; *see* Anderson Dep. 155:20-156:13.

Accordingly, the Court concludes that sufficient evidence exists for a reasonable jury to find that CHCI was aware of Plaintiff's disability and, further, that she was terminated under circumstances giving rise to an inference that the termination was based on her disability.

### 2. *Legitimate, Nondiscriminatory Reason*

Because Plaintiff has established a prima facie case of discrimination, the burden shifts to CHCI to articulate a legitimate, nondiscriminatory reason for the termination. *See C.R. England*, 644 F.3d at 1038. Defendants' burden is "exceedingly light," *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (internal quotation marks omitted), and that burden is carried here: Defendants maintain that Plaintiff was fired solely because she refused to report to her reassigned work location. *See* Defs.' Mot. at 24; Def. CHCI's Resps. to Pl.'s Disc. Reqs. at 8.

### 3. *Pretext*

Plaintiff contends that CHCI's stated reason for terminating her is pretextual. "A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *DePaula*, 859 F.3d at 970 (internal quotation marks omitted). "This is often accomplished by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Id.* (internal quotation marks omitted).

To establish pretext, Plaintiff points to facts and inconsistencies that, viewed in her favor, undermine CHCI's proffered reason for terminating Plaintiff, i.e., that she refused to report to her reassigned work location.  First, as discussed, the record—viewed in the light most favorable to Plaintiff—shows that Lawson instructed Plaintiff to report to Healthy Start, not Mary Mahoney, on the morning of February 17, 2022.  Second, though Lawson stated in her discovery responses that she placed Plaintiff on administrative leave on February 17, 2022, to determine next steps after Plaintiff refused to report to her reassigned work location, Lawson testified in her deposition that she placed Plaintiff on administrative leave because Geurin was unavailable to meet on February 17 and Lawson needed additional time to determine Plaintiff's new job duties.  *See* Lawson Dep. 169:12-24; Def. Lawson's Resps. to Pl.'s Disc. Reqs. at 2.  Third, though Lawson testified that Plaintiff was no longer part of the Healthy Start group as of February 16, 2022, the Personnel Action Form documenting Plaintiff's termination states that Plaintiff was in the Healthy Start department on her termination date, February 18, 2022, and lists Plaintiff's supervisor as Thomas, not Geurin.  *See* Lawson Dep. 162:9-163:7; Termination Form.  Finally, Lawson testified that she decided to terminate Plaintiff after receiving Plaintiff's February 18, 2022 complaint to the Board of Directors, not after Plaintiff allegedly refused to report to Mary Mahoney on February 17, 2022.  *See* Lawson Dep. 153:17-154:6.  The Court finds that this evidence, when viewed in Plaintiff's favor, is sufficient to create a question of fact as to whether CHCI's proffered reason for Plaintiff's termination was pretextual.

### 4. Conclusion

Because Plaintiff has established a prima facie case of disability discrimination and has shown a genuine dispute as to whether CHCI's proffered reason for her termination was pretextual, Defendants are not entitled to summary judgment on Plaintiff's ADA discrimination claim against CHCI.

### B. ADA Retaliation Claim

Plaintiff additionally brings a claim of retaliatory termination based on her request for a reasonable accommodation and her engagement in protected opposition to disability discrimination. *See* Compl. ¶¶ 48-52. The ADA expressly prohibits retaliation against individuals who have "opposed any act or practice made unlawful by this chapter or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "As with discrimination claims, once the plaintiff has established a prima facie case of retaliation, the employer has the burden of coming forth with a legitimate, nondiscriminatory reason for its adverse action. If the employer does so, the plaintiff may then present evidence that the reason given by the employer is a mere pretext for the real, discriminatory reason for the adverse action." *Butler v. City of Prairie Vill.*, 172 F.3d 736, 752 (10th Cir. 1999) (citation omitted).

To establish a prima facie case of retaliation, Plaintiff must demonstrate "(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse . . . [,] and (3) that a causal connection exists between the protected activity and the materially adverse action." *EEOC*

*v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007).  Defendants contend that Plaintiff did not engage in protected activity and that there is no link between her alleged protected activity and the materially adverse action (her termination).  *See* Defs.' Mot. at 21-22.

The record supports a finding that Plaintiff engaged in protected activity.  Plaintiff requested approximately two weeks of FMLA leave for her mental health condition on January 27, 2022.  *See* FMLA Form.  A request for reasonable accommodations may constitute protected activity, and a leave of absence may be a reasonable accommodation provided that, as here, "the employee's request states the expected duration of the impairment." *Valdez v. McGill*, 462 F. App'x 814, 818 (10th Cir. 2012); *see Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1265 (10th Cir. 2001).  Further, it can reasonably be found that Plaintiff engaged in protected opposition when she complained in writing to her superiors that she was being discriminated against because of her disability.  *See* Lawson Grievance at 2; *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors.").

As to the causal link, "an ADA retaliation plaintiff may rely solely on temporal proximity to show causation during the prima facie stage . . . where [her] protected activity is closely followed by an adverse employment action." *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1191 (10th Cir. 2016).  The Tenth Circuit has held that a six-week period between a protected activity and adverse action may, by itself, establish causation. *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (holding time span of one and one-half months between protected activity and adverse employment action did

not warrant dismissal of retaliation claim), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1194-97 (10th Cir. 1998).  Here, Plaintiff was terminated less than 24 days after requesting FMLA leave and less than 24 hours after complaining of disability discrimination.  Accordingly, Plaintiff has presented evidence from which a jury could reasonably conclude that Plaintiff's termination was the result of her engaging in activity protected by the ADA.

Plaintiff has thus sufficiently established a prima facie case of retaliatory termination.  And, as discussed in connection with Plaintiff's ADA discrimination claim, Plaintiff has produced sufficient evidence to raise a genuine dispute as to the pretextual nature of CHCI's stated reason for her termination.  Therefore, CHCI is not entitled to summary judgment on Plaintiff's ADA retaliation claim.

### C.  *FMLA Retaliation Claim*

As to the FMLA, Plaintiff claims she is entitled to relief because CHCI retaliated against her for using FMLA leave by placing her on administrative leave and terminating her employment.  *See* Compl. ¶¶ 53-57.  The FMLA prohibits employers from retaliating against their employees for exercising their rights under that Act.  *See* 29 U.S.C. § 2615(a)(2); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006).  Like ADA discrimination and ADA retaliation claims, FMLA retaliation claims are subject to the *McDonnell Douglas* burden-shifting analysis.  *Metzler*, 464 F.3d at 1170.

The summary-judgment record reflects that Plaintiff engaged in a protected activity by taking FMLA leave and that shortly thereafter CHCI terminated her employment.  Because the termination was "very closely connected in time" to Plaintiff's exercise of her

FMLA rights, Plaintiff has established a prima facie case of FMLA retaliation.  *Metzler*, 464 F.3d at 1171-72 (internal quotation marks omitted).  And, as outlined above, Plaintiff has produced sufficient evidence to raise a genuine dispute of material fact that CHCI's stated reason for her termination is pretextual.  Therefore, Defendants are not entitled to summary judgment on Plaintiff's FMLA retaliation claim.

### D. Tortious Interference Claims

Finally, Plaintiff asserts that the individual actions of Anderson and Lawson constitute tortious interference.  *See* Compl. ¶¶ 58-74.  More specifically, Plaintiff claims that Anderson's and Lawson's actions "constitute unlawful tortious interference with a contractual/employment relationship" and that the women's participation in the decision to terminate Plaintiff "interfered with the employment relationship and expectation of continued employment Plaintiff had with Defendant entities" in violation of Oklahoma law.  *Id.* ¶¶ 59, 71.  Defendants argue that these claims must fail because there is no evidence that either Lawson or Anderson was merely acting in furtherance of her own interest or otherwise outside the scope of her employment.  *See* Defs.' Mot. at 30.

To prevail on the claim of tortious interference with contractual/business relations, a plaintiff must prove "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damages proximately sustained as a result of the interference."  *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1165 (Okla. 2009).  The related claim of tortious interference with a prospective economic advantage requires: "the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an

intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted." *Boyle Servs., Inc. v. Dewberry Design Grp., Inc.*, 24 P.3d 878, 880 (Okla. Civ. App. 2001) (internal quotation marks omitted).

Generally, an employee cannot be held liable for interfering with a contractual or business relationship, or a prospective economic advantage, between her employer and a third party. *See Grillot v. Okla. ex rel. Univ. of Okla. Bd. of Regents*, No. CIV-19-241-F, 2019 WL 3558183, at *3 (W.D. Okla. Aug. 5, 2019) (citing *Martin v. Johnson*, 975 P.2d 889, 896 (Okla. 1998)). Liability for tortious interference with contract or prospective economic advantage may attach, however, if an employee acted in furtherance of her own interests and against those of her employer. *See id.* at *3-4; *Coleson v. Feed the Child., Inc.*, No. CIV-22-191-R, 2022 WL 2655800, at *3 (W.D. Okla. July 8, 2022).

Such liability "requires more than a showing of bad faith; plaintiff must show that the [employee] was acting contrary to the business interest of [her] employer *and* in furtherance of the [employee's] own, personal interests." *Grillot*, 2019 WL 3558183, at *4. In other words, Plaintiff must produce some evidence that Anderson and Lawson were "advancing some agenda or interest separate from that of [their] employer." *Graham v. Cargill, Inc.*, No. CIV-10-977-HE, 2011 WL 5429316, at *4 (W.D. Okla. Nov. 9, 2011). Here, Plaintiff alleges that Anderson and Lawson "pursu[ed] their own motives which included hostility toward Plaintiff due to personal disregard for Plaintiff's state and federally protected rights." Compl. ¶ 62. In responding to Defendants' Motion, Plaintiff points to only the evidence discussed above suggesting Anderson and Lawson were acting

19

with a discriminatory or retaliatory intent when terminating Plaintiff.  Pl.'s Resp. at 37-38.

This Court has held that a supervisor's mere hostility toward an employee based on that employee's protected characteristic is insufficient to show that the supervisor was acting in furtherance of her own personal interests and against her employer's.  *See Graham*, 2011 WL 5429316, at *4 (finding that evidence of supervisor's racist conduct toward terminated employee was insufficient to show that the supervisor was acting "in furtherance of his own interests or advancing some agenda or interest separate from that of his employer"); *see also DeShazer v. L&W Supply Corp.*, No. CIV-23-45-F, 2023 WL 2977733, at *7 (W.D. Okla. Apr. 17, 2023) (noting concern that "[t]acking an interference claim against an individual employee onto a statutory employment discrimination claim is a strategy that is susceptible of abuse" and stating that, at summary judgment, the plaintiff would be required to point to evidence sufficient to reasonably conclude that the defendant-employee was acting contrary to the business interests of his employer).  *But see Houston v. Indep. Sch. Dist. No. 89 of Okla. Cnty.*, No. CIV-08-374-D, 2010 WL 988406, at *6 (W.D. Okla. Mar. 12, 2010) (finding that evidence of intentional race discrimination constituted more than a "mere scintilla" and was sufficient to survive summary judgment on tortious interference claim).

Here, the Court finds that the Rule 56 material identified by Plaintiff does not suffice to create a legitimate question of fact as to whether Anderson or Lawson was acting in furtherance of her own interests and against the interests of CHCI.  Though Plaintiff has produced evidence suggesting that Anderson and Lawson acted with a discriminatory or retaliatory intent when terminating her, such evidence in this case reflects only conduct,

however illegal or flawed, of employees *as employees* and does not give rise to a reasonable inference of any individual purpose or benefit.  Because the Court finds that Plaintiff has not produced more than a mere scintilla of evidence that Anderson and Lawson acted against CHCI's interests in pursuit of their own personal agenda, the Court finds that they are entitled to summary judgment on Plaintiff's tortious interference claims.

CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment (Doc. No. 25) is GRANTED IN PART and DENIED IN PART, as follows:

1. Defendants are entitled to summary judgment on Plaintiff's claims of tortious interference with a contractual or employment relationship and tortious interference with a prospective economic advantage; and

2. The Motion is otherwise denied.

Judgment shall be entered for Defendants on the relevant claims at the conclusion of this litigation.

IT IS SO ORDERED this 2nd day of August, 2024.

CHARLES B. GOODWIN
United States District Judge